Robin Schloesser,

                    Plaintiff,

v.

Flagship Credit Acceptance LLC; Experian
Information Solutions, Inc.; and Equifax
Information Services, LLC,

                    Defendants.

**Case No.:**

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

1.  **FCRA, 15 U.S.C. § 1681** *et seq.*

Plaintiff Robin Schloesser, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Flagship Credit Acceptance LLC ("Flagship"), and Defendants Experian Information Solutions, Inc. ("Experian"); and Equifax Information Services, LLC ("Equifax") (referenced collectively as "CRA Defendants").

## I.    INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendants Flagship, Experian, and Equifax. Plaintiff contends that the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

2. Plaintiff's Complaint also alleges that Defendants Equifax and Experian also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendants' reporting inaccurate information about Plaintiff.

3. Plaintiff's Complaint also alleges violations of the FCRA against Defendant Flagship for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's disputes from CRA Defendants Experian and Equifax.

## II.    JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5. Venue in the Eastern District of Tennessee is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES

6. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7. Plaintiff is a natural person who resides in Heiskell, Tennessee.

8. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9. Defendant Flagship Credit Acceptance LLC is a financial institution engaged in the business of giving credit and collecting debt. Flagship is also a *furnisher*, as contemplated by in 15 U.S.C. § 1681s-2. Upon information and belief, Flagship is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Flagship is

2

headquartered at 3 Christy Drive, Suite 201, Chadds Ford, Pennsylvania 19317-9670. Flagship can be served through their registered agent, Corporation Service Company, located at 2908 Poston Ave, Nashville, Tennessee 37203-1312.

10.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).   On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through their registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12.     The CRA Defendants Experian and Equifax regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

13.     During all times pertinent to this Complaint, Flagship and the CRA Defendants were authorized to conduct business in the State of Tennessee and conducted business in the State of Tennessee on a routine and systematic basis.

14.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.     FACTUAL BACKGROUND

16.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

17.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

18.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

19.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

4

20.     Defendants Experian and Equifax two of the three major consumer reporting agencies (at times referred to individually as a "CRA," and "the CRAs" collectively) in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (also known as credit reports).

21.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22.     The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

23.     The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

5

24.    The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

25.    The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

26.    The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

27.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

28.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendants' consumer reports.

29.    The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

30.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

31.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

32.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

33.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

34.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

35.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

36.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge

suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

37.     The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is that all statutorily dischargeable debts, other than those that have been successfully challenged in an adversary proceeding court, are discharged.

38.     Additionally, information indicating that a specific debt has not been discharged, but instead was successfully challenged through an adversary proceeding, is retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

39.     The CRA Defendants also receive information about discharge exceptions directly from furnishers of account/tradeline information.

40.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

41.     The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

42.     The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b), despite possessing information inconsistent with the reported information, and information that establishes that the reported information is inaccurate.

43.     The CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

8

44.     The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

45.     The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

46.     The CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRAs, already included in the CRAs' credit files, contained in public records that the CRA Defendants regularly access, and/or sourced through the CRAs' independent and voluntary efforts.

47.     The CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including pertaining to inaccurate account and payment statuses, and failing to verify the status of accounts even after notice from the consumer, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

*Allegations Specific to the Credit Reporting of Plaintiff*

48.     Plaintiff filed a Chapter 13 Bankruptcy on or about April 6, 2018, in the United States Bankruptcy Court for the Eastern District of Tennessee (Case No. 3:18-bk-31036).

49.     Plaintiff successfully made all payments in compliance with the Bankruptcy Plan agreed with the Bankruptcy Court.

50.     After successfully making all her payments and completing her Chapter 13 Plan, Plaintiff received an Order of Discharge on or about February 2, 2021. Thereafter, Plaintiff's Account should have reported with a $0 balance owed and/or discharged in bankruptcy.

9

51.     The CRA Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 13 Bankruptcy.

52.     The CRA Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

53.     Defendant Experian reported Plaintiff's bankruptcy filing and bankruptcy discharge information (date/court/chapter) in both the Public Records section, as well as in the individual tradelines of Plaintiff's consumer reports.

54.     Defendant Equifax reported Plaintiff's bankruptcy filing information (date/court/chapter) in both the Public Records section, as well as in the individual tradelines of Plaintiff's consumer reports. Defendant Equifax did not report the account as discharged in the Public Records section.

55.     The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiff's consumer reports.

56.     The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 13 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

10

57.     The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 13 Bankruptcy, and/or with a zero-dollar balance but did not.

58.     Rather than accurately report the discharged debts, the CRA Defendants inaccurately reported Plaintiff's Flagship Account (the "Flagship Account"), starting with 6306314382297**** and opened on or about August 1, 2016, which predated Plaintiff's bankruptcy filing.

59.     The Account was included in Plaintiff's bankruptcy and discharged on or about February 2, 2021.  Therefore, the Flagship Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

60.     However, Experian inaccurately reported the discharged Flagship Account with an outstanding and past due balance owed of $5,336 as of April 2021, 180 days past due, and a monthly payment of $641.00, instead of reflecting that Plaintiff had been making timely payments on the account in accordance with her Chapter 13 payment plan, and that the Account was discharged and therefore has a $0 balance.

61.     Experian also inaccurately reported Plaintiff's CBC LLC Account (the "CBC Account" original creditor MSO Pediatric Consultants), starting with 119039****. Experian reported the open date as February 8, 2019, but the original debt was incurred in July 2015, which predated Plaintiff's bankruptcy filing.

62.     Experian inaccurately reported the discharged CBC Account as a collection account and an outstanding and past due balance owed of $312, instead of reflecting the CBC Account was included in Plaintiff's Chapter 13 and therefore discharged with a $0 balance.

11

63. Experian also inaccurately reported Plaintiff's Wakefield and Associates Account (the "Wakefield Account" original creditor Vista Radiology), starting with 119166****. Experian reported the open date as June 4, 2019, but the original debt listed in Plaintiff's bankruptcy petition, meaning the debt predated Plaintiff's bankruptcy filing.

64. Experian inaccurately reported the discharged Wakefield Account as a collection account with an outstanding and past due balance owed $251, instead of reflecting the Wakefield Account was included in Plaintiff's Chapter 13 and therefore discharged with a $0 balance.

65. Experian did not indicate that the accounts were discharged in bankruptcy or report the accounts with a zero-dollar balances, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 13," and/or with zero-dollar balances.

66. Equifax also inaccurately reported the discharged Flagship Account with a status of over 120 days past due, a reported balance of $7,807, and a monthly payment of $641.00 instead of reflecting that Plaintiff had been making timely payments on the account in accordance with her Chapter 13 payment plan.

67. Furthermore, Equifax reported the Flagship Account was 180 days or more past due in the comments section, even though the Flagship Account is discharged.

68. Equifax also inaccurately reported Plaintiff's CBC Account and reported MSO Pediatric Consultants as the original creditor.

69. Equifax inaccurately reported the discharged CBC Account as a collection account and an owed balance of $312, instead of reflecting the CBC Account was included in Plaintiff's Chapter 13 and therefore discharged with a $0 balance.

12

70.     Equifax also inaccurately reported the "Wakefield Account" and reported Vista Radiology as the original creditor.

71.     Equifax inaccurately reported the discharged Wakefield Account as a collection account and an owed balance of $251, instead of reflecting the Wakefield Account was included in Plaintiff's Chapter 13 and therefore discharged with a $0 balance.

72.     Equifax also did not indicate that the accounts were discharged in bankruptcy or report the accounts with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 13," and/or with zero-dollar balances.

73.     The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially whereas here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

74.     The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

75.     According to Experian, creditors typically charge off accounts after they have been delinquent, i.e., gone without any scheduled payments for six months, a charge-off does not mean your debt is forgiven, you are still legally responsible for repaying the outstanding amount.

76.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges, the time frame is generally between 120 and 180 days after you become delinquent, and a charge-off does not mean that you no longer owe the debt, you are still legally obligated to pay the debt.

77. Notably, the other national consumer reporting agency Trans Union did not inaccurately report the accounts as Experian and Equifax did.

*Plaintiff's Disputes*

78. On or about June 29, 2021, Plaintiff sent certified letters to Experian and Equifax disputing their inaccurate reporting of the Account.

79. The letters specifically advised Plaintiff's Flagship Account was reporting incorrectly. Plaintiff informed both CRAs that the debt was paid off her in Bankruptcy. Plaintiff provided all relevant information including the account number and the last four digits of her social security number

80. Based on the tracking receipts, Experian and Equifax, received Plaintiff's dispute letters.

81. Upon information and belief, Experian and Equifax, forwarded Plaintiff's disputes to Flagship within 5 business days of receipt.

82. Upon information and belief Flagship received Plaintiff's dispute.

83. Experian did not respond to Plaintiff's dispute. Experian changed Plaintiff's account status as "paid/closed" but are still inaccurately reporting that late payments in connection with the same account, and also reporting a balance in the "Balance Histories" portion of the Account.

84. Equifax responded to Plaintiff's dispute and informed Plaintiff that they will be reaching out to Flagship to verify the disputed information. Equifax included in their dispute letter that they have updated the Flagship Account to report as "included in bankruptcy". However, Equifax carelessly updated the wrong account, even though Plaintiff included the

14

correct account number and account name in her dispute letter.

85. Equifax continued to inaccurately report the Flagship Account with a status of charge off with an owed balance of $7,907.

86. Experian and Equifax did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to Flagship, despite possessing independent information indicating the Flagship Account was discharged, and/or the ability to independently verify the Flagship Account discharge through the same sources it receives consumer bankruptcy information.

87. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian and Equifax that Plaintiff obtained a discharge, Experian and Equifax merely parroted information furnished by Flagship despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

88. Flagship failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian and Equifax. Flagship failed, among other things, to review all relevant information regarding the dispute or ignored this information.

89. Consequently, Flagship continued to furnish inaccurate data to Defendants Experian and Equifax despite knowledge of Plaintiff's dispute and otherwise possessing information from which Flagship should have reported accurate information about the Account.

90. The CRA Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported inaccurate account statuses and payment histories.

91.     The CRA Defendants inaccurately reported the Flagship Account with a balance owed after the Account was discharged in Chapter 13 Bankruptcy and therefore had a zero-dollar balance.

92.     The CRA Defendants failed to indicate that the Flagship Account had a zero-dollar balance and was included/discharged in Chapter 13 Bankruptcy.

93.     The CRA Defendants' reporting of the Flagship Account is patently false and therefore inaccurate.

94.     If not patently false, the CRA Defendants' reporting of the Flagship Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

95.     Upon information and belief, had Defendants accurately reported the accounts with zero balances, Plaintiff's credit scores and/or DTI would have been better.

96.      After Plaintiff's bankruptcy discharge, Plaintiff applied for a Discover Card for which she was denied, due to Defendant Experian's inaccurate reporting of the accounts.

97.     Plaintiff has been desperately trying to rebuild her life after her bankruptcy discharge but due to Defendants' inaccurate reporting has been hindered from doing so. Plaintiff attempted to get a new car in order to drive to see her granddaughter but unable to secure a loan. Plaintiff also has not been able to qualify for credit cards further hindering any chance she has again at normalcy.

98.     Defendant Equifax's inaccurate reporting of the accounts, along with additional information belonging to Plaintiff, was published to CredCo by Defendant during the process of Plaintiff's credit applications.

99.     As a direct result of the CRA Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

100.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, loss of sleep, reputational damage, frustration, shock, embarrassment, violation of Plaintiff's right to privacy, and anxiety.

101.    Additionally, plaintiff lives with a pre-existing medical condition, the physical symptoms of which have been exasperated by Defendants' inaccurate reporting, and which caused Plaintiff to receive distressing, unwanted alerts regarding the inaccurate reporting of an outstanding balance and overdue payments for the Flagship Account.

## V.     COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)
### The CRA Defendants

102.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

103.    The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

104.    The CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after a Plaintiff received a Discharge Order.

17

105.    In this case, Defendants inaccurately reported debts related to accounts that Defendants knew predated Plaintiff's Chapter 13 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero-dollar balance.

106.    Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported this information in Plaintiff's consumer reports.

107.    When Defendants voluntarily procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

108.    Despite knowledge of these legal obligations, Defendants willfully and consciously breached their known duties and deprived Plaintiff of Plaintiff's rights under the FCRA. Defendants knew or should have known of their obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

109.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving CRAs from which the CRA Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

110.    Additionally, the CRA Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

111.    However, the CRA Defendants inaccurately reported Account that predated Plaintiff's Chapter 13 Bankruptcy, was included and discharged by Plaintiff's bankruptcy discharge.

18

112.    The CRA Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in her consumer reports, including her bankruptcy case number, court, date of filing and date of discharge.

113.    The CRA Defendants are also on notice from other tradelines reported by the CRA Defendants that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

114.    The CRA Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

115.    The CRA Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero balance.

116.    The CRA Defendants had prior notice of their unreasonable procedures for reporting discharged debts.

117.    The CRA Defendants also possessed information from which they should know the information reported about Plaintiff was inaccurate, as Plaintiff's consumer reports include: the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

118.    Yet in this case, the CRA Defendants reported the accounts, which predated Plaintiff's bankruptcy, with balances owed after discharge, and past due outstanding balances, instead of a zero-dollar balance.

19

119. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

120. The CRA Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when they knew or should have known the information, they are reporting is inaccurate, and/or otherwise contradicted by information known by the CRAs, reported to the CRAs, and/or reasonably available to the CRAs.

121. The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

122. Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

123. Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, the CRA Defendants continued to inaccurately report the Account with an outstanding balance, despite notice that the Account was discharged, and the ability to independently confirm that the Account was discharged.

124. The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, the CRA Defendants possessed the information to independently confirm/verify that the Account was discharged, including information concerning continued payments, and/or specific notice from Plaintiff.

125. The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to independently verify that the Account was discharged following Plaintiff's dispute. The information necessary to do so can be retrieved from the same sources the CRA Defendants procure consumer bankruptcy information.

20

126. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

127. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

128. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

129. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified the CRA Defendants of the inaccurate information reported in Plaintiff's credit file.

130. Defendants Experian and Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a) Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b) Failing to consider all relevant information while investigating Plaintiff's dispute.

(c) Failing to include all relevant information when notifying Flagship of Plaintiff's dispute.

131.    Instead of reasonably reinvestigating Plaintiff's dispute, Defendants Experian and Equifax did not respond to Plaintiff's dispute and continued to report the discharged Account with an outstanding balance after Plaintiff's bankruptcy discharge.

132.    The CRA Defendants' conduct, as described above, was done willfully and knowingly; or alternatively the CRA Defendants' conduct was negligent.

133.    The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

134.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

135.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, anxiety, frustration, shock, embarrassment, and anxiety.

136.    The CRA Defendants are the direct and proximate causes of Plaintiff's damages.

137.    The CRA Defendants are substantial factors in Plaintiff's damages.

138.    Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.    COUNT II
### Defendant Flagship Credit Acceptance LLC
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

139.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

140.     The FCRA requires that furnishers of information like Flagship to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

141.     Flagship knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Flagship possesses or can easily obtain substantial written materials that detail its duties as a furnisher under the FCRA.

142.     Despite knowing these legal obligations, Flagship acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

143.     Plaintiff disputed the Flagship tradeline through two national CRAs: Defendants Experian and Equifax.

144.     Thereafter, the consumer reporting agencies forwarded Plaintiff's dispute to Flagship, notifying Flagship that Plaintiff was disputing the information it had furnished about the Account.

145.     Flagship received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

146.     Flagship continues to furnish inaccurate information about Plaintiff to Defendant CRAs, even though Flagship possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

147. The inaccurate Flagship account materially and adversely affects Plaintiff's credit standing.

148. On at least one occasion within the past two years, by example only and without limitations, Defendant Flagship violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian and Equifax.

149. Flagship violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

24

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

150.     Flagship unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

151.     Flagship is a direct and proximate cause, as well as a substantial factor in causing damage and harm to Plaintiff.

152.     Plaintiff suffered damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Flagship.

153.     Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, anxiety, frustration, shock, embarrassment, and anxiety.

154.     Consequently, Flagship is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.     <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

25

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII.   JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 16th day of November 2021.

**/s/Christopher Kim Thompson**
TN Bar No. 015895
Thompson Law
4525 Harding Pike, Suite 203
Nashville, TN 37205
Telephone No. 615-620-4329
E-mail: kim@thompsonslawoffice.com
*Counsel for Plaintiff Robin Schloesser*

26